## In re CRAWFORD PLUMMER CO.

(District Court, D. Massachusetts. July 10, 1918.)

No. 23559.

1. BANKRUPTCY ⬳255—USE OF LEASED PREMISES BY RECEIVER OR TRUSTEE—RENTAL.

A trustee or receiver has the right to use the premises occupied by bankrupt for a reasonable period, sufficient to enable him to dispose of the bankrupt's property without unnecessary loss, and such use is not an adoption of a lease to bankrupt, but the estate must pay reasonable compensation for such use.

2. BANKRUPTCY ⬳255—USE OF LEASED PREMISES BY RECEIVER OR TRUSTEE—RENTAL.

The rent reserved in a lease to bankrupt is, under ordinary conditions, the fair measure of what should be paid by a receiver or trustee.

In Bankruptcy. In the matter of the Crawford Plummer Company, bankrupt. On review of order of referee. Reversed.

Albert A. Gleason, of Boston, Mass. (Gleason & Higgins, of Boston, Mass., of counsel), for creditors.
Asa P. French, of Boston, Mass., for receivers.

MORTON, District Judge. The question presented by these petitions for review is how much rent shall be paid out of the estate to the landlords for the time during which the premises were occupied by the common-law assignee and by the receivers in bankruptcy. The period was from April 18 to August 1, 1916, inclusive, 3⅖ months. The premises were a store on Washington street, Boston, near the best retail district. They were leased by the landlords to a third person, and by it were orally sublet to the bankrupt, on ·the terms stated in the lease. In legal· effect the bankrupt was only a tenant at will; but the lessee and its guarantor on the lease had close business relations with the brankrupt, the arrangement had continued for a number of years, and for the purposes of the present question I think the case substantially the same as if the bankrupt had held directly under the lease. The failure occurred in April, 1916; the lease ran till December 31, 1917. The total rent amounted to $26,420 per year; i. e., $2,201.66 per month.

The matter was heard by the referee and is here on his certificate, which states the facts. He finds:

"That the rental value of this store for the purposes of permanent occupancy at the time it was occupied by the receivers was greater than the rent reserved under the leases. * * * The rental value of the premises, used only· for temporary occupancy, was perhaps as low as $100 a week. The receivers were tenants at sufferance, and it was understood that they were to vacate the premises whenever a satisfactory offer to rent by lease was received by the· petitioners. * * * There was no agreement between the assignee and the owners, or between the receivers and the owners, or between the trustees and the owners, with reference to the amount of rent to be paid. A statement was made by one of the receivers to the representative of the owners, to

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the effect that usually the amount of rent reserved under the lease was the sum allowed."

The learned referee allowed the sum of $1,500 per month as being what he regarded as "equitable and just," and both parties (the landlords and the trustees) have taken review proceedings from his order.

[1] A trustee or receiver has the right to use the pemises occupied by the bankupt for a reasonable period, sufficient to enable him to dispose of the bankrupt's property without unnecessary loss, and to do so by selling it there, if that be the best way. In re Chambers, Calder & Co. (D. C. R. I.) 98 Fed. 865; Remington on Bankruptcy (2d, Ed.) § 984. This court has several times stopped landlords from prematurely ousting receivers or trustees. Such use of real estate is not an adoption of a lease to the bankrupt. The liquidating officers are to pay therefor reasonable compensation for the use and occupancy of the premises. In this case neither the landlords nor the lessee made any effort to oust the assignee or receivers, and, if they had, they would not have been permitted to do so, without allowing a reasonable time in which to close out the business, which was one of some size. In re Chambers, Calder & Co., supra. It was understood by the parties that efforts were being made to find a permanent tenant, but no pressure to vacate was ever put upon the assignee or the receivers by the landlords or by the lessee. In view of these facts, the element of uncertainty in the assignee's and receiver's tenancy seems to me to have been overemphasized by the learned referee.

[2] It has generally been thought that the rent reserved in a lease to the bankrupt was, under ordinary conditions, the fair measure of what the use and occupancy by receivers or trustees was fairly worth, and it has been the sum usually awarded in this district. In re Adams Cloak, Suit & Fur House (D. C. Mass.) 199 Fed. 337. In the absence of an express agreement for a lower rental, there is a presumption in favor of that sum; and it will ordinarily be allowed, unless unusual circumstances appear making it plainly unreasonable. Fleming v. Noble, 250 Fed. 733 (C. C. A. 1st Cir.). There were no such circumstances in this case; and it seems to me that the ordinary practice ought to have been followed. It is true that this makes the rent large for the business done; but that was a matter with which the landlords were not concerned, and which ought not, I think, to diminish their rights.

The order of the referee is vacated, and an order may be entered in accordance with this opinion.