**In re CURRY PRINTERS, INC., Debtor.**

**Bankruptcy No. 89–61180.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary.

Oct. 4, 1991.

MEMORANDUM OPINION AND
ORDER ON MOTION FOR
SUMMARY JUDGMENT

KENT LINDQUIST, Chief Judge.

## I

### Statement of Proceedings

This Chapter 11 case came before the Court on a Motion for Summary Judgment filed by Eastman Kodak Company, (hereinafter: "EKC") on April 3, 1991. EKC requests the Court enter a Summary Judgment as to its Motion for Payment of Post-petition Administrative Expenses.

By Order of this Court date April 9, 1991, Curry Printers, Inc., (hereinafter: "Debtor") was given 15 days to file a response or answer to said motion, and upon so doing the EKC was granted 7 days to file a reply thereto.

However, EKC did not file a Supporting Brief with its original Motion as required by Local Bankruptcy Rule B–109. EKC's Brief was subsequently filed on May 20, 1991.

The Debtor then filed an Answer Brief in opposition to EKC's Motion on May 28, 1991.

EKC filed its Reply Brief on August 22, 1991.

On February 11, 1991, EKC filed its Motion for the Payment of Post-petition Administrative Expenses pursuant to 11 U.S.C. § 503(b) in the sum of $64,370.95.

Said Post-petition Motion alleges as follows:

1. On or about November 24, 1987, Curry Printers, Inc. ("Curry"), entered into a rental agreement with EKC for the rental of a Kodak Ektaprint 300AF copier, Serial No. 2744803. A copy of said rental agreement is attached hereto and marked as Exhibit A.

2. On or about March 14, 1988, Curry entered into a rental agreement with EKC for the rental of a Kodak Ektaprint 150AF copier, Serial No.

---

Samuel Miller, Highland, Ind., for debtor.

Dominic Pollizotto, Indianapolis, Ind.

605765. A copy of said rental agreement is attached hereto and marked as Exhibit B.

3. On July 17, 1989, Curry filed its instant Chapter 11 bankruptcy petition.

4. At the time Curry filed its bankruptcy petition, its rental payments on the above-described copiers were delinquent.

5. Since the filing of its bankruptcy petition, Curry has made no rental payments to EKC on the above-described copiers.

6. On or about October 16, 1990, the Court entered an order granting EKC's request for relief from stay, and allowed EKC to take immediate possession of the above-described copiers.

7. Curry's access to and use of the above-described copiers has benefited the estate, and therefore such use constitutes an administrative expense pursuant to 11 U.S.C. § 503(b).

8. EKC's administrative claim for the use of the above-described copiers is presumed to be the amount of the copiers' monthly rental charges.

9. The rental charge for copier Model 150AF, from petition date to date of pick-up, is $22,220.45.

10. The rental charge for copier Model 300AF, from petition date to date of pick-up, is $42,150.57.

11. EKC's total administrative claim for Curry's use of the above-described copiers is $64,371.02.

After due notice to all creditors, and the Debtor, of said Motion by EKC pursuant to Order of Court dated February 20, 1991 giving until March 18, 1991 to object thereto, the Debtor on March 12, 1991 filed its objection to EKC's Motion and asserted as follows:

1. That Kodak failed to assert its rights for almost one year after debtor's petition was filed.

2. That as a result of said delay, Kodak has committed laches, greatly prejudicing the debtor's estate and the unsecured creditors.

3. That even if Kodak is entitled to some type of administrative claim, said claim should be determined by the value of the benefit to the estate, if any and not by the contractual rental provision between debtor and Kodak.

4. That debtor is entitled to a set-off approximating Eleven Thousand ($11,000.00) Dollars against Kodak as a result of a preferential transfer received by Kodak prior to the filing of debtor's petition.

The Court takes judicial notice of the record in the Debtor's main case which shows the following:

1. That the Debtor commenced its Chapter 11 by filing its voluntary petition on July 17, 1989.

2. The Debtor never filed a motion to accept or reject the subject leases with EKC.

3. That on June 20, 1990, EKC filed its motion for an order requiring the Debtor to assume or reject the subject equipment rental agreement with the Debtor.

4. That by order entered on August 9, 1990, the Debtor was granted to and including August 24, 1990 to object to EKC's motion, and failing to do so the Court could grant said Motion without further notice and hearing.

5. That on August 24, 1990, the Debtor filed a request for a hearing on EKC's Motion to Accept or Reject.

6. That pursuant to docket entry order of September 14, 1990, it was stipulated between EKC and the Debtor that the Debtor file an acceptance or rejection of said leases by October 16, 1990, or said leases would be deemed rejected.

7. That the Debtor did not file a Motion to Accept or Reject said leases on or before October 16, 1990.

8. That on October 19, 1990 an order was entered that the equipment leases between EKC and the Debtor

were deemed rejected as of October 16, 1990.

## II

### Conclusions of Law and Discussion

No objection was made by counsel to the jurisdiction of this Court as to this matter, the Court finds jurisdiction to be present, and that this contested matter is a core proceeding pursuant to 28 U.S.C. § 157.

It does not appear that the relevant material facts are in dispute, although EKC did not file a Statement of Material Facts as to which it contends there is no genuine issue as required by Local Bankruptcy Rule B–111, nor did the Debtor file a "Statement of Genuine Issues" setting forth all material facts to which it contended there exists a genuine issue to be litigated. In addition, neither party filed any supporting affidavits, or discovery responses.

Both EKC and the Debtor in their Statement of Facts admit that the Debtor and EKC entered into two prepetition equipment leases, that the Debtor had possession of the leased equipment, post-petition, from the petition date of July 17, 1989 until on or about October 16, 1990, when pursuant to order of this court the leases were deemed rejected, and that EKC thereafter took possession of the leased equipment. There also appears to be no dispute as to the terms and conditions of the leases as to the contractual amount that was to be paid to EKC by the Debtor, and which was not paid by the Debtor post-petition.

The threshold issue to be resolved based on EKC's motion is whether EKC's administrative claim arising out of the two leases should be measured by the contractual terms of payment in the leases as asserted by EKC, or whether EKC's administrative claim should only be allowed versus the Debtor's estate to the extent EKC can show that the equipment had actually been used by the Debtor, and such use benefited the estate as asserted by the Debtor.

EKC in its brief argues that it is entitled to an administrative expense claim in the sum of $63,371.02 which represents the Debtor's unpaid post-petition lease obligation through the date the leases were deemed rejected based on the contractual terms of the leases. In support of its position, EKC cites In re Fred Sanders Co., 22 B.R. 902 (Bankr.E.D.Mich.1982).

EKC also asserts that the Seventh Circuit has long adhered to the rule that administrative expense claims are to be based on the reasonable value of the property, regardless of the use made thereof by the estate. In re Xonics, Inc., 65 B.R. 69, 73 (Bankr.N.D.Ill.1986).

The Debtor in its brief correctly notes that two distinct rules have developed regarding the payment of administrative expenses for the post-petition possession of leased equipment by the Debtor prior to rejection of the lease, and that In re Fred Sanders, 22 B.R. 902, supra, supports the argument made by EKC.

However, the Debtor points out that another line of cases have come to a contrary conclusion, and have held that an administrative rent claim should be based on the Debtor's actual use of the leased property, citing, Broadcast Corp. of GA. v. Broadfoot, 54 B.R. 606 (N.D.Ga.1985), appeal decided, Subscription Television of Greater Atlanta, 789 F.2d 1530 (11th Cir.1986). The Eleventh Circuit affirmed the decision of the District Court in Broadcast Corp. Broadcast was a chapter 7 case as opposed to a chapter 11 case as the one before the Court.

The Debtor asserts that the line of reasoning in Broadcast, supra, was adopted by the Seventh Circuit in In re Jartran, Inc., 886 F.2d 859 (7th Cir.1989) where the Court stated as follows:

> In order to qualify as "actual and necessary" administrative expenses, expenditures must benefit the estate as a whole rather than just the creditor claimant.

Id. 886 F.2d at 871.

The Debtor notes that this same conclusion has been reached by other Courts in reorganization cases, citing, In re Pickens–Bond Constr. Co., 83 B.R. 581 (Bankr. E.D.Ark.1988) (Chapter 11); In re Carmi-

*chael,* 109 B.R. 849 (Bankr.N.D.Ill.1990); *Matter of Patch Graphics,* 58 B.R. 743 (Bankr.W.D.Wis.1986).

The Debtor also observes that although the Court in *In re Xonics,* 65 B.R. 69, *supra,* adopted the reasoning of *Fred Sanders,* 22 B.R. 902, *supra,* that same Court four years later in the case of *In re Carmichael,* 109 B.R. 849, *supra,* specifically rejected the reasoning in *Fred Sanders,* and adopted the reasoning of *Subscription Television,* 789 F.2d 1530, *supra.*

In its Reply Brief, EKC asserts that this Court should not apply the "actual use" rule as advocated by the Debtor, but should apply the "reasonable lease value" formula whereby the lessor is compensated according to the terms of the lease as the lease rate is presumed to be reasonable, citing as additional authority, *Matter of Three Star Telecast, Inc.,* 73 B.R. 270, 274 (Bankr.D.Puerto Rico, 1987); *In re Funding Systems Asset Management Corp.,* 72 B.R. 87, 89 (Bankr.W.D.Pa.1987); *In re Rare Coin Galleries of America, Inc.,* 72 B.R. 415, 417 (D.Mass.1987) (this case involved § 365(d)(3), and a nonresidential real estate lease); *Mohawk Industries, Inc. v. Related Industries, Inc.,* 64 B.R. 667, 669 (D.Mass.1986); *Matter of Schulz,* 63 B.R. 163, 168 (Bankr.D.Neb.1986); *In re Mohawk Industries, Inc.,* 54 B.R. 409, 411–12 (Bankr.D.Mass.1985) (collecting cases); *In re GHR Energy Corp.,* 41 B.R. 668, 671–72 (Bankr.D.Mass.1984); *In re Prime, Inc.,* 37 B.R. 897, 899 (Bankr.W.D.Mo.1984) (Debtor used collateral in which creditors held security interests as opposed to lease); *In re Vermont Real Estate Investment Trust,* 25 B.R. 809, 811 (Bankr.D.Vt.1982); *See also, In re Virginia Packaging Supply Co., Inc.,* 122 B.R. 491, 494 (Bkrtcy.E.D.Va. 1990) (interpreting § 365(d)(3)); *In re National Oil Co.,* 80 B.R. 525, 527 (Bkrtcy. D.Colo.1987) (interpreting § 365(d)(3));

*Matter of William J. Brittingham, Inc.,* 39 B.R. 575, 577–578 (Bkrtcy.D.Del.1984); *In re Royal Intern. Corp.,* 30 B.R. 750, 752 (Bkrtcy.W.D.Ky.1983); *Matter of Florida Airlines, Inc.,* 17 B.R. 683, 685 (Bkrtcy. M.D.Fla.1982).

Section 503(b)(1)(A) of title 11 states as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) *the actual, necessary costs and expenses of preserving the estate,* including wages, salaries, or commissions for services rendered after the commencement of the case: (Emphasis supplied).[1]

The word "including" in § 503(b) is not limiting. *See,* § 102(3).

As stated in *In the Matter of Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984):

It is well settled that expenses incurred by the debtor-in-possession in attempting to rehabilitate the business during reorganization are within the ambit of § 503. *See, Reading Co. v. Brown,* 391 U.S. 471, 475, 88 S.Ct. 1759, 1761, 20 L.Ed.2d 751 (1968) (construing predecessor to § 503).

\* \* \* \* \* \*

The policies underlying the provisions of § 503 (and its predecessor, § 64(a)(1)) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1) (1976) are not hard to discern. If a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the bankrupt to function. *See, In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976) (Coffin, Chief Judge). Thus, "[w]hen third parties are *induced* to supply goods or services to the debtor-in-posses-

---

**1.** Section 503(a) is derived mainly from Section 64(a)(1) of the former Bankruptcy Act with some changes. *See,* H.R.Rep. No. 595, 95th Cong. 1st Sess. 355 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 66–67 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Section 64(a)(1) (prior 11 U.S.C. § 104(a)(1)) provided as follows:

(a) the debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; ...

sion ... the purposes of [§ 503] plainly require that their claims be afforded priority." *Id.* (emphasis added; footnote omitted). Without a provision like § 503, efforts to reorganize would be hampered by the necessity of advance payment for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization.

This involves no injustice to the pre-petition creditors because it is for their benefit that reorganization is attempted. If reorganization successfully rehabilitates the debtor, presumably the pre-petition creditors will be better off than in a liquidation. *See, Reading Co. v. Brown, supra,* 391 U.S. [471] at 478, 88 S.Ct. [1759] at 1763 [20 L.Ed.2d 751 (1968)]. However, because priority should not be afforded unless it is founded on a clear statutory purpose, if the appellant's claim does not comport with the language and underlying purposes of § 503, their claim must fail. *See In re Chicago, Milwaukee, St. Paul & Pacific Railroad,* 658 F.2d 1149, 1163 (7th Cir.1981) (general rule is equality of distribution; deviation must appear in the statute), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Any preference for claims not intended by Congress to have priority would dilute the value of the intended priority and thus frustrate the intent of Congress. *Id; In re Mammoth Mart, supra,* 536 F.2d at 953.

Recognizing the need for careful criteria in granting priority, the court in *Mammoth Mart* established a two part test for determining whether a debt should be afforded administrative priority. Under these criteria a claim will be afforded priority under § 503 if the debt both (1) "arise[s] from a transaction with the debtor-in-possession" and (2) is "beneficial to the debtor-in-possession in the operation of the business." *In re Mammoth Mart, Inc.,* 536 F.2d at 954. This test is, of course, essentially an effort to determine whether the underlying statutory purpose will be furthered by granting priority to the claim in question, and we will apply it in that spirit.

\*      \*      \*      \*      \*      \*

To serve the policy of the priority, inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor. *See In re Mammoth Mart, Inc., supra,* 536 F.2d at 954. *Id.* 732 F.2d at 586–87. (Emphasis in original).

In *In re Chicago Rock Island and Pacific R.R. Co.,* 756 F.2d 517 (7th Cir.1985), the Court quoted Collier on Bankruptcy with approval as follows:

"Administrative expenses consist of all the expenses incurred after the order for relief that are necessary to administer the estate and, if the debtor is reorganizing or is not immediately liquidating, to conduct the business of the debtor after the order for relief." 3 *Collier on Bankruptcy,* ¶ 507.04[1][a], at pp. 507–24 (15th ed. 1984).

*Id.* 756 F.2d at 519.

Section 507(a)(1) of title 11 provides:
(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

Subsection 365(g) of title 11 states as follows:
(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition; or
(2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

(A) if before such rejection the case has not been converted under section 1112, 1307, or 1208 of this title, at the time of such rejection; or

(B) if before such rejection the case has been converted under section 112, 1307, or 1208 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

It should also be noted that section 502(g) of title 11 states as follows:

(g) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

Section 365 of title 11 has as its general subject matter Executory Contracts and Unexpired Leases.

Subsections 365(a) and (d)(1), (2) and (3) of title 11 provides in its relevant part as follows:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

\* \* \* \* \* \*

(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then such contract or lease is deemed rejected.

(2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60 day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.[2]

(b) The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease ·not assumed or rejected within that time shall be deemed to be rejected. If a trustee is not appointed, any such contract or lease shall be deemed to be

**2.** Prior to 1938, the option to assume or reject was conferred by case law. *Fred Sanders,* 22 B.R. at 904, n. 5. Under the Bankruptcy Act of 1898, the trustee in a reorganization proceeding, or the debtor-in-possession had a reasonable time to accept or reject an unexpired lease. Cases under the 1898 Act remain good law under the Code, as Congress considered and rejected changing the existing law by imposing time limits on reorganizing debtors. *See, Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 105 (2nd Cir.1982).

In 1938, Section 70(b) (11 U.S.C. § 110(b)) was added to the prior Bankruptcy Act and provided as follows:

It is noted that § 365(d)(3) was added by § 362(a) of the Leasehold Management Amendments within the Bankruptcy Amendment Act of 1984, and provides that the trustee shall perform all obligations of the debtor, except those specified in § 365(b)(2) after the order of relief under any unexpired lease of *nonresidential real property,* until said lease is assumed or rejected notwithstanding § 503(b)(1). Section 365(d)(3) appears to require payment of all rents pursuant to the lease without regard to actual use or occupancy, at least prior to rejection. *See, e.g., Matter of Thompson,* 127 B.R. 717 (Bankr.D.Conn. 1991). However, because the case at bar only relates to the lease of *personal* property, rather than non-residential real estate, that provision is not applicable to the case at bar. *See, Collier on Bankruptcy,* ¶ 503.04[I](a)(ii), pp. 503–24–26 and N. 14. (L.King. 15th ed.).

Section 365 of title 11 is implemented by Bankr.R. 6006 which provides as follows:

Rule 6006. Assumption, Rejection and Assignment of Executory Contracts.

(a) Proceeding to Assume, Reject, or Assign. A proceeding to assume, reject, or assign an executory contract, unexpired lease, or time share interest, other than as part of a plan, is governed by Rule 9014.

(b) Proceeding to Require Trustee to Act. A proceeding by a party to an executory contract, unexpired lease, or time share interest in a chapter 9 municipality case, chapter 11 reorganization case, or chapter 13 individual's debt adjustment case, to require the trustee, debtor in possession, or debtor to determine whether to assume or reject the contract, lease, or time share interest is governed by Rule 9014.

(c) Hearing. When a motion is made pursuant to subdivision (a) or (b) of this rule, the court shall set a hearing on notice to the other party to the contract and to other parties in interest as the court may direct.

■ A lease is deemed as rejected where the debtor has failed to file a timely assumption motion despite the fact that the debtor had continued to pay the rent, and was engaged in on-going discussions concerning the assumption or assignment of the lease. *In re Treat Fitness Center, Inc.,* 60 B.R. 878, 879–80 (B.A.P. 9th Cir. 1986).

■ The only method of declaring an intention to assume a lease is by the timely filing of a formal motion. *In re Lew Mark Cleaners Corp.,* 86 B.R. 331, 333 (Bankr. E.D.N.Y.1988). Although the acceptance of rent during the 60 day period is not tantamount to a waiver or estoppel by the landlord of an unexpired lease, a lessor can waive and be estopped by its actions. *Id.* 86 B.R. at 334–35.

Thus, there is no question that based on the record in this case, the subject leases were rejected by the Debtor on October 16, 1990.

The Court will begin its analysis of the merits by briefly reviewing the authorities cited by EKC and the Debtor.

In *In re Fred Sanders Co.,* 22 B.R. 902, *supra,* cited favorably by EKC, the chapter

---

rejected within thirty days after the date of the order directing that a trustee not be appointed. A trustee shall file, within sixty days after adjudication or within thirty days after he has qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee. Unless a lease of real property expressly otherwise provides, a rejection of the lease or of any covenant therein by the trustee of the lessor does not deprive the lessee of his estate. A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same; but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same is enforceable. A trustee who elects to assume a contract or lease of the bankrupt and who subsequently, with the approval of the court and upon such terms and conditions as the court may fix after hearing upon notice to the other party to the contract or lease, assigns the contract or lease to a third person, is not liable for breaches occurring after the assignment.

11 debtor had leased three vans. The debtor stipulated it would assume or reject the lease by August 31, 1982. He decided to reject the lease and returned the vans to the lessor in February of 1982. The lessor filed an administrative claim pursuant to § 503(b)(1)(A). The debtor objected to the allowance of the claim, contending that it did not use any of the vans prior to rejection of the lease and, therefore the lessor had no claim.

The *Sanders* Court did a lengthy and scholarly analysis of the issue, both under the present Bankruptcy code and the previous Bankruptcy Act. The Court then concluded as follows:

> The view that the estate should be liable only for the debtor's actual use or occupancy is based, in part at least, upon the premise that expenses of administration are to be minimized. The desire to keep a lid on expenses of administration is laudable, but an estate is not to be maintained for the debtor or creditors at the expense of those who have valid charges against property of the estate.
>
> [I]n establishing proper administrative rent, ... the Referee should not consider that the trustee has used only for storage purposes property that had been occupied by a going business.... Nor can the appropriate rent be limited by the amount that the referee feels the estate can "afford to pay"—to do so would be to confer on general creditors an advantage obtained after bankruptcy at the expense of the landowner.

*Diversified Services, Inc. v. Harralson,* 369 F.2d 93, 95 (5th Cir.1966).

To permit a debtor to deprive a lessor of the use of his property and unilaterally dictate the amount of the lessor's claim does not comport with elementary notions of justice. Equity is best served by the rule adopted in *Kneeland v. American Loan & Trust Co., supra;* [136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890) ] *Fleming v. Noble, supra;* [250 F. 733 (1st Cir.1918) ] and *Dayton Hydraulic Co. v. Felsenthall, supra.* [116 F. 961 (6th Cir.1902) ]. Debtors not only have the right to retain and use leased property while deciding whether to assume or reject the lease, but also the right to assign the lease even if the lease prohibits or restricts assignment subject only to the condition that adequate assurance of future performance by the assignee is provided. § 365(f)(1), (2)(B). The inequity of compelling a lessor to, in effect, give a debtor the option to negotiate a favorable assignment of the lease for which it has no business use, or to return the leased property, if unable to do so, without compensating the lessor for the reasonable use value of the property is self evident. Fruehauf's claim is to be computed by reference to the use value of the vans and not by the benefit, if any, conferred upon the debtor.

Practical considerations also dictate that the lessor's claim should be based on the reasonable value of the property regardless of the purpose for which it was used by the debtor. To hold otherwise would require every lessor to move immediately to seek a court order compelling the debtor to assume or reject an existing lease. "Experience under the present code has shown beyond doubt that the transaction cost of seeking any form of relief in the bankruptcy court is an extremely strong deterrent to creditor action, and that creditors will act only where the expected benefits strongly outweigh the costs of the proceeding." [9] There is no justification for imposing this burden upon a lessor who is willing to cooperate with the debtor. A debtor has it within his power to minimize the costs of administration by acting promptly. "[T]he debtor is generally well aware in advance that a bankruptcy may be necessary and can plan ahead to decide which leases should be retained." Report of the Committee on the Judiciary United States Senate on S.2297, S.Rep. No. 527, 97th Cong. 2d Sess. 12 (1982) (Shopping Center Protections Improvements Act of 1982). A result which encourages dilatory action by the debtor should be avoided.

Nor is the fact that Fruehauf could have moved pursuant to section 365(d)(2)

to compel the debtor to assume or reject the lease pertinent to the present inquiry. A lessor is not to be penalized if he cooperates with the debtor and gives him time to resolve his financial problems. The lessor has a right to assume that until a debtor rejects a lease, the leased property is being used for the purpose for which it was leased and that the debtor will pay the reasonable value of the property measured by such use. *Matter of Florida Airlines, Inc.*, 17 B.R. 683 (Bkrtcy., M.D.Fla.B.J.1982).[10]

In the absence of convincing evidence to the contrary, the payment fixed by the lease is presumptively reasonable. *Green v. Finnigan Realty Co.*, 70 F.2d 465 (5th Cir.1934); *Matter of Chase Commissary Corp.*, [11 F.Supp. 288, 289 (S.D.N.Y.1935)] *supra; Matter of Datamation, supra,* [1 B.C.D. 1698 (S.D.N.Y. B.J.1975)]. Fruehauf's claim, therefore, is to be computed by reference to the payments stipulated in the lease, unless the debtor establishes that these payments are not reasonable.[11]

9. Senate Committee on the Judiciary, S.2000: Bankruptcy Improvements Act of 1982, S.Rep. 97–446, 97th Cong.2d Sess. 35 (1982).

10. The debtor by making a lease payment and entering into negotiations with respect to the lease gave Fruehauf added justification for making this assumption.

11. Since any rule of liability involving the claim of the lessor is equitable in nature, facts not present here may justify a different result.

*Id.* 22 B.R. at 904–05 (footnotes 9, 10 and 11 included).

Although, the estate of the Debtor-lessee was held liable for the administrative claim based upon the payment terms set out in the lease in *Fred Sanders,* that Court apparently did not set forth a fixed and unyielding rule, for it also stated, that the lessor's claim, "[i]s to be computed by reference to the payments stipulated in the lease, *unless the Debtor establishes that these payments are not reasonable." Id.* 22 B.R. at 907. (Emphasis supplied). In addition, at footnote 11, the Court noted that the liability to the lessor is "equitable in nature", and "facts not present here may justify a different result." However, it does not follow from these qualifying

statements that the lessor in a chapter 11 reorganization may only recover "administrative rent" to the extent that the leased chattels are actually used by the Debtor to the benefit of the estate. This qualifying *dicta* can also be construed to mean that if the agreed lease payments are not reasonable, the Court should award administrative lease payments based on reasonable lease terms otherwise found in the industry, regardless of the actual use of the leased equipment by the Debtor.

It also appears to the Court that there may be a valid distinction to be drawn between a lessor's administrative claim in a case under chapter 11, and one under chapter 7. The rights and powers of the chapter 7 trustee as to a lease of personal property are significantly different than those of chapter 11 debtor-in-possession. In a chapter 7 case the trustee is usually attempting to liquidate or abandon the debtor's chattels, rather than use them. In a chapter 11 case, the debtor is normally attempting to reorganize as an on-going concern, and it can be fairly assumed that if it does not move to accept or reject a lease it is either using or contemplating using the leased equipment in its operations for there would be no valid business reason to continue to accrue administrative expenses, even if they were unsubstantial if the use of the leased property was not at least contemplated. This is not true of a chapter 7 trustee, unless the Court expressly authorizes the trustee to operate the debtor's business pursuant to 11 U.S.C. § 704. *See, e.g., In re VyVyan,* 55 B.R. 691 (Bankr.E.D.Wis.1985). Accordingly, unless a § 704 order is entered, the lessor may properly assume the trustee is not actually using the leased chattels, though he may be in possession of them. In addition, in a chapter 7 case the lessor can rely on the Code for an automatic rejection of the lease after 60 days, unless the trustee moves to accept the lease, or moves for additional time to accept or reject the lease. *See,* 11 U.S.C. § 365(d)(1).

Pursuant to 11 U.S.C. § 1107, subject to such limitations and conditions as the Court prescribes, a Debtor-in-possession has all

the rights, other than the right to compensation under 11 U.S.C. § 330, and powers, to perform all functions and duties, with certain exceptions not relevant here, as a trustee. In addition, pursuant to 11 U.S.C. § 1108, unless the Court orders otherwise, the Trustee (Debtor-in-possession) may operate the Debtor's business. Finally, pursuant to 11 U.S.C. § 363(c)(1), if the business of a debtor is authorized to be operated under § 1108, unless the Court orders otherwise, the trustee may use property of the estate in the ordinary course of business without notice or hearing.

In a chapter 7 case, the trustee must accept or reject an expired lease of personal property within 60 days of the order for relief, or such additional time as the court, for cause, within such 60 days period, fixes. If the trustee does not so act, then such lease is *deemed* rejected by operation of law. The lessor need take no further affirmative legal steps to insure the lease is rejected. *See,* § 365(d)(1). On the other hand, a chapter 11 debtor-in-possession may assume or reject an unexpired lease of *personal* property at any time before confirmation of a plan, but the Court on the request of any party to the lease, may order the debtor-in-possession to determine within a specified period of time whether to assume or reject said lease. *See,* § 365(d)(2). This is to be compared with a lease of nonresidential *real* property wherein a debtor-in-possession must move to accept or reject an unexpired lease within 60 days after the date of the Order of Relief, or within such additional time as the Court fixes. *See,* § 365(d)(4).

As noted previously, 11 U.S.C. § 503(b)(1) of the present Bankruptcy Code is derived mainly from Section 64(a)(1) of the prior Bankruptcy Act. (Formerly 11 U.S.C. § 104(a)(1)). *See,* footnote 1, *supra.* Although the language was rephrased, the intent and purpose of § 503(b)(1) appears to be essentially the same as former Section 64(a)(1).

Neither § 503(b)(1), nor former Section 64(a)(1), directly addresses the standard to be applied in the awarding of a request for administrative expenses arising out of the post-petition rejection of a lease by a trustee or debtor-in-possession, as lessee, that had not been previously assumed or was either expressly rejected or was deemed rejected by operation of law, or by stipulation. This issue has been developed by the case law, both under the present Code and the former Act. Nearly all courts, both pre-Code and post-Code, have allowed a request for administrative expenses, arising out of the post-petition possession of leased property. Most of the Act cases involved real estate. However, it would appear that the guiding principles enunciated under these Act cases would be applicable to leases of real property as well as to a lease of personal property, as in the case before the court. *See, In re Prime, Inc.,* 37 B.R. at 898, *supra; In re Peninsula Gunite, Inc.,* 24 B.R. 593, 594 (9th Cir. BAP 1982).

It is also observed, that notwithstanding a fairly substantial body of case law that developed in this area under the prior Bankruptcy Act pursuant to former Section 64(a)(1), Congress in enacting the current Bankruptcy Code did not deem it necessary to expressly reject or adopt the case law developed under the prior Act on the issue before this Court, and no attempt was made by the Congress to specifically codify the administrative expenses allowable to a lessor when a debtor-in-possession or trustee rejected a lease by expressly adopting one line of case law over another.

Neither EKC nor the Debtor, has analyzed the cases decided under Section 64(a)(1) of the prior Act in light of § 503(b)(1) of the Bankruptcy Code presently extant, with the exception of *Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890) cited by EKC, which was decided even prior to the Bankruptcy Act of 1898. An understanding of the case law under the Bankruptcy Act is valuable, particularly, where, as here, Congress did not make any substantial changes from Section 64(a)(1) of the previous Act in enacting § 503(a)(1). There *was* a commercial world before 1978 that was substantially impacted by the Bankruptcy Act, many of the issues were the same, and the cases decided under the

Act should not be ignored unless the Code specifically rejected prior case law, or codified a judicially developed rule where there was a prior split in the cases.

This brings in to play a fundamental rule of statutory construction as set out by the United States Supreme Court in the case of *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). There the court stated:

> The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266–267, 99 S.Ct. 2753, 2759–60, 61 L.Ed.2d 521 (1979). The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.

*Id.* 106 S.Ct. at 759–60. *Accord, Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 359–60, 93 L.Ed.2d 216 (1986); *Matter of Smith*, 848 F.2d 813, 819 (7th Cir.1988).

In *Midlantic*, the Supreme Court declined to hold that the new Bankruptcy Code silently abrogated an exception created by the courts in construing the old Act.

Thus, the court will give precedential effect to Act cases addressing the issue before the court.

In addition, as was observed by the Supreme Court in *Kelly v. Robinson*, 107 S.Ct. at 358, *supra, quoting,* Justice O'Connor in *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), " ' "In expounding a statute, we must not be guided by a simple sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." ' "

Of course, the seminal case is that of *Kneeland v. American Loan & Trust Co.*, 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890), *cited with approval* in the *Fred Sanders* case, 22 B.R. 902, *supra.*

In *Kneeland*, the plaintiffs purchased real property at a foreclosure sale held by the receiver of an insolvent railroad. The terms of the sale provided that the property was subject to encumbrance for the expenses of the receivership. The receiver had incurred rental expenses for rolling stock under lease to the railroad, which the receiver had taken possession of during the receivership. The plaintiffs objected to the amount of the rental expense, claiming that they should not have been liable for the entire amount of rent when the receiver did not assume the lease and did not use all of the rented property.

The Supreme Court rejected the plaintiffs' contention that the obligation accrued by the receiver should be based only on his actual use of the property and held that the claim should be allowed at a reasonable value irrespective of actual use. *Id.* 136 U.S. at 101, 10 S.Ct. at 954. In justifying this result, the court stated:

> [I]f more was taken possession of than was needed, it was their mistake. The court is not to be assumed to be an experienced railroad manager, knowing exactly the amount of rolling stock needed for the operation of the road. It may justly assume that what had been contracted for was necessary, and if the trustees ask that all may be taken possession of, it may act upon that as a declaration that all is necessary, and that rental value is to be paid for all.

> \*      \*      \*      \*      \*      \*

> So, although it may be true, as claimed by counsel, that more was taken possession of than was needed, and that there was only a limited use of each car and engine, yet the case is to be taken as though all were needed and full use made of all; and that sum which would be reasonable rental value for such use should be paid. Such value is not to be determined by the amount of actual use, but by what, in the first instance and before the use had been had, would be adjudged a reasonable rental value. Upon such basis no complaint can be made of the amount fixed by the court, reducing as it did the amount reported by the master.

3A *Collier on Bankruptcy,* ¶ 62.14(3)[2], pp. 1513–15 (14th ed. Moore, Oglebay & King) in commenting on costs of preserving the estate under the prior Act stated:

> Leases in which rent is made payable in advance frequently provide for a power in the lessor to terminate the lease upon default of the lessee. It has been held that when in the absence of such legitimate termination prior to bankruptcy of the lease, and subsequently to bankruptcy a receiver occupies the leased premises, the receiver succeeds to the "right" of the bankrupt to enjoy this peculiar possession at sufferance, without having to pay for use and occupation for this "term at sufferance" as an expense of preserving the estate. Under this view the receiver can be surcharged if he pays for use and occupancy for this "term at sufferance". The better view, however, looks with disfavor upon this kind of sponging on the landlord and requires payment as cost of administration of the *pro rata* rent due for the time of occupancy by the court's officer.
>
> The *quantum* of allowance for use and occupation by the receiver or trustee is measured by "the reasonable value of such use and enjoyment. Ordinarily this will be the contractual rental *pro rata temporis,* unless it is shown that the contractual rental itself is clearly unreasonable. There is a presumption to the effect that the contractually reserved rent is reasonable.

(footnotes omitted).

The "better view" referred to in Colliers was followed in *In re Buttonwood Sec. Inc.,* 349 F.Supp. 273 (S.C.Cal.1972); *In re Fredrick Meats, Inc.,* 483 F.2d 951 (9th Cir.1973); and, *In re Universal Medical Serv., Inc.,* 357 F.Supp. 1137 (E.D.Pa.1973). *See also, In re Benguiat,* 20 F.Supp. 504 (S.D.Cal.1937) where the Court stated:

> A trustee occupying leased premises is liable for the reasonable value of such occupancy. If there be a lease, the rental reserved, if not unreasonable, is the criterion. *See* 6 Remington on Bankruptcy (4th Ed.1924) § 2659; Gilbert's Collier on Bankruptcy (4th Ed.1937) § 1281, p. 1002; *In re McNeice* (C.C.A.9, 1923) 287

F. 706; *Gardner v. Gleason* (C.C.A.1, 1919) 259 F. 755. And see, *In re Owl Drug Company* (D.C.Nev.1935) 12 F.Supp. 446, 30 A.B.R. (N.S.) 709:[;] *Green v. Finnigan Realty Company* (C.C.A.5, 1934) 70 F.(2d) 465; *Petition of Colburn* (C.C.A.1, 1926) 16 F.(2d) 780; *In re Sherwoods, Inc.* (C.C.A.2, 1913) 210 F. 754, Ann.Cas. 1916A, 940; *George v. Lee* (C.C.A.2, 1937) 89 F.(2d) 37, 33 A.B.R. (N.S.) 620.

\*       \*       \*       \*       \*       \*

The right of the landlord to receive the reasonable value of the occupancy by the trustee does not flow from the relationship of landlord and tenant. It flows from occupancy [*In re Mullings Clothing Company* (D.C.Conn.1916) 230 F. 681], although, as the authorities already cited show, the rent reserved in the lease is the measure. The trustee is not compelled to occupy the premises. When he does so, he becomes liable. The debt so created arises subsequent to bankruptcy. It is unrelated to any of the rights of the landlord under the lease. *See, Gate City Clay Co. v. Dickey* (C.C.A.8, 1930) 39 F.(2d) 581.

\*       \*       \*       \*       \*       \*

There is no duty to repossess. And if the landlord were deprived of the right to receive rents from the trustee, while he is occupying the premises, unless he exercised the right to repossess the property, we would be asking the landlord to surrender a benefit to which he is entitled, through the occupancy by the trustee of his property, for an illusory claim which may never have much, if any, cash value.

\*       \*       \*       \*       \*       \*

It is neither good law nor good ethics to confer upon a person, be he even a trustee in bankruptcy, a gratuity at the expense of another.

In *In re Millard's, Inc.,* 41 F.2d 498 (7th Cir.1930), the Circuit Court of Appeals, Seventh Circuit, held that the rent agreed to in the lease was the reasonable rental

value of the premises while occupied by the receiver and trustee.

In *In re Millard's, Inc.*, the receiver and trustee occupied the premises in question from January 28, 1929 to March 31, 1929. The premises were not used by the receiver or the trustee to conduct business, but were used only for storage purposes. The owner made no attempt to obtain possession of the premises until March 8, 1929 when it filed a petition to have the receiver vacate the premises. The evidence also showed had the receiver vacated the premises the next day after taking possession, the same would have been vacant for at least sixty days without any rental earnings. The annual rent for the year 1929 was $22,000.00, or $1,833.33 a month. The Referee found that a rental charge of $1,250.00 a month was fair and reasonable, this being the monthly rate from November 1, 1925 to January 1, 1927. The Referee also found that he could see no reason for a larger rental charge to the receiver or trustee, "who used the place for storage only". The District Court affirmed the Referee, and the owner appealed claiming that the rent should at the rate of $22,-600.00 a year. The Court reversed the Referee's findings and stated:

That appellant, the landlord, is entitled to an allowance of reasonable rental for the time the premises were occupied by the receiver and trustee, is not denied. The sole question is: What is such reasonable rent?

While these officers are not bound by the terms of a lease under which the bankrupt was occupying the premises, the rate fixed by such lease will presumptively be regarded as the fair rental value, subject to such modification as the evidence of witnesses and of facts and circumstances may require. *Gardner v. Gleason* (C.C.A.) 259 F. 755; *In re Crawford Plummer Co.* (D.C.) 253 F. 76; *Fleming v. Noble,* (C.C.A.) 250 F. 733; *In re Nathanson,* (D.C.) 24 F.(2d) 760.

The premises consist of a large storeroom and basement in a new building costing $900,000, on a prominent corner of an important retail district of the city of Milwaukee. While the initial year's rent was at the rate of $1,250 a month, the tenant had exercised his option of renewal at the progressively higher rates of the lease, that for 1929 being $22,000. The landlord supplemented the evidence afforded by the lease by the testimony of four witnesses, whose qualifications to testify to the rental value of Milwaukee business property was conceded, and whose testimony was that the fair rental value of this property during the time in question was from $22,500 to $27,000 a year. No witness testified that it was any less. The receiver testified that for his purpose it was not worth more than $500 a month; and some other witnesses stated that they had rented suitable property in different parts of the city for temporary purposes, such as closing out a stock, at as low as $10 a day. Other witnesses testified to a much lower valuation for storage purposes. These are no test. It may happen that where property is temporarily vacant, the owner may be willing to make a special contract for a short time at small rental.

*The fair rental value of such property cannot be tested by its value for such a use or for storage purposes.* If storage was the only purpose of retaining it, the stock might have been taken to distinctly storage premises at very much lower rate. *Nor is it material that some time would be required to prepare the property for another tenant, or that another tenant was not immediately on hand to take the premises.*

\*　　\*　　\*　　\*　　\*　　\*

The landlord's earlier effort to regain possession of the property was resisted by the receiver and trustee until such time as they were through with it.

We find nothing in the facts and circumstances appearing to justify the conclusion that the reasonable rental value of the premises was less than the amount stipulated for this period of the lease. (Emphasis supplied).

*Accord, In re Preisler,* 13 F.2d 116 (7th Cir.1926) (lessor's claim for post petition rent allowed at the rate of rental reserved

in lease, which the court found to be the fair and reasonable value of the use of the premises). *See also, In re Chakos,* 24 F.2d 482 (7th Cir.1928) (lessor should be allowed an administrative claim for reasonable value of use and occupancy of premises accruing after bankruptcy and prior to surrender of premises, if the evidence showed that the premises were retained for the benefit of the estate after the adjudication). *Compare: In re Schnabel,* 612 F.2d 315 (7th Cir.1980) (upon rejection of lease by trustee as *lessor,* trustee not precluded from collecting payments from tenants for fair rental value for use and occupancy of premises, and in absence of evidence of reasonable value it is presumed that the proper compensation for use and occupancy is the amount of rent fixed in the lease) (Act case).

A review of two of the four cases cited with approval by the Seventh Circuit in *In re Millard's, Inc.,* 41 F.2d 498, *supra* is also enlightening. In *Gardner v. Gleason,* 259 F. 755 (1st Cir.1919), the court cited *Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 103, 10 S.Ct. 950, 955, 34 L.Ed. 379, and stated as follows:

> We do not think the rental reserved in the lease, nor the rent which had been previously paid by the bankrupt as a tenant at will, are conclusive in determining what rental should be allowed the owners during the occupancy of their premises, for the preservation of the estate of the bankrupt; but evidence of the rent which had been previously paid, either under the lease or a verbal letting, may be of great assistance in determining what fairly and equitably ought to be allowed by the court of the owner as just compensation for such occupation. It was held in *Fleming v. Noble,* 250 Fed. 733, 163 C.C.A. 65, that where the rental reserved in the lease is a fair rental value of the premises occupied by the receiver, that should be awarded to the owner of the premises for the forced occupation of his premises, in the absence of any evidence of any agreement that a lower rental was agreed upon.
>
> The referee has found that occupancy by the assignee was of benefit to the estate, as the business of the bankrupt was maintained as a going business, and rent for such occupancy should be allowed as one of the expenses in preserving the estate. *Randolph v. Scruggs,* 190 U.S. 533, 538, 23 Sup.Ct. 710 [712], 47 L.Ed. 1165; Remington on Bankruptcy, vol. 1, p. 986.
>
> We do not think there was an error in the failure of the court below to treat as immaterial the amount of business done. *If the premises occupied were too large for the business which was transacted, this was a matter to be determined by the receivers; and if they chose to occupy the whole of the premises without making any arrangement in regard to a lower rent, we do not think the rent should be made dependent upon their success, and see no reason why, if the sales were small, the landlord should not, on this account, be entitled to a fair rental for his premises.*
>
> \*    \*    \*    \*    \*    \*
>
> We think that, where the rental which had been previously paid by the bankrupt, either under the terms of the lease or under a tenancy at will, is the fair rental value of the premises, the court, under all equitable considerations, ought to award this rental to the owner of the premises which are occupied for the preservation of a bankrupt estate, in the absence of any agreement for a lower rental or circumstances of an unusual nature that would render it inequitable, and we do not think there are such circumstances in this case. (Emphasis supplied).

In *In re Crawford Plummer Co.,* 253 F. 76 (D.Mass.1918), the court stated:

> It has generally been thought that the rent reserved in a lease to the bankrupt was, under ordinary conditions, the fair measure of what the use and occupancy by receivers or trustees was fairly worth, and it has been the sum usually awarded in this district. *In re Adams Cloak, Suit & Fur House,* (D.C.Mass.) 199 Fed. 337. In the absence of an express agreement for a lower rental, there is a presumption in favor of that sum; and it will ordinarily be allowed, unless unusual circumstances appear making it plainly

unreasonable. *Fleming v. Noble,* 250 Fed. 733 (C.C.A. 1st Cir.). There were no such circumstances in this case; and it seems to me that the ordinary practice ought to have been followed. *It is true that this makes the rent large for the business done; but that was a matter with which the landlords were not concerned, and which ought not, I think, to diminish their rights.* (Emphasis supplied).

In *Crawford,* the total rent was $26,-420.00 a year, or $2,201.66 per month. The Referee allowed $1,500.00 a month as being "equitable and just", and both parties appealed. The District Court vacated the Referee's order.

Thus, it was the case law in this Circuit, as well as in many other Circuits, that in determining the amount of the landlords administrative claim for post-petition occupancy of a leased property by a receiver, debtor, or trustee, the fair rental value was presumptively the rate fixed in the lease, unless the facts showed that the rent reserved in the lease was clearly unreasonable, or a different rate had been in fact agreed upon. This was true regardless of the extent of actual use of the leased property by the receiver, debtor, or trustee.

Collier on Bankruptcy at ¶ 503.-04[1][a][ii], pp. 24–25, n. 14 (L. King 15th ed.) in discussing rent and § 503(b)(1) states as follows:

> Two lines of cases have developed with respect to the issue of the extent to which the trustee actually uses and occupies the premises. One line, represented by *In re American Anthracite & Bituminous Coal Corp.,* 171 F.Supp. 377 (S.D.N.Y.1959), *aff'd. sub nom. American A. & B. Coal Corp. v. Leonardo Arrivabene,* 280 F.2d 119 (2d Cir.1960), holds that reasonable rental value is based on the portion of the leased premises actually used and occupied. Some cases go so far as to say that if the debtor makes no use of the demised property, the lessor is not entitled to any administrative rent. *See, e.g., In re Rhymes, Inc.,* [14 B.R. 807] 5 C.B.C.2d 478, 481 (B.Ct., D.Conn.1981); *In re*

*Standard Furniture Company,* 6 B.C.D. 270 (B.Ct., S.D.Cal.1980) (When the trustee in a chapter 7 case failed to formally reject a real property lease before the 60–day automatic rejection provisions found in section 365(d)(1), but orally informed the lessor of his intent to vacate the premises and returned the keys and all control over the premises well within the 60 days, the court held that the lessor was entitled to an administrative expense only for the time the trustee actually used and controlled the premises and not for the entire 60 days). The other line of cases, represented by such cases as *Kneeland v. American Land and Trust Co.,* 136 U.S. 89 [10 S.Ct. 950, 34 L.Ed. 379] (1898) (sic); *In re Millard's, Inc.,* 41 F.2d 498 (7th Cir. 1930); and *Matter of International Storage Corp.,* [41 B.R. 808] 11 C.B.C.2d 183 (B.Ct., E.D.Wis.1984), subscribes to the premise that rent claims under section 503(b)(1)(A) and former section 64a(1) are based on the reasonable rental value of the property without regard to the space actually used by the debtor.

This issue, as it applies to "nonresidential real property leases" has been made largely moot by the 1984 amendments to section 365(d). The issue continues to be important, however, in real property leases other than "nonresidential real property leases" and in personal property leases. Recent cases involving personal property leases generally follow the two lines of cases discussed above. In *In re Dixie Fuels, Inc.,* 13 B.C.D. 584 (B.Ct., D.Ala.1985), the court relied on *In re Airlift Int'l., Inc.,* 761 F.2d 1503, 12 C.B.C.2d 1266 (11th Cir.1985), to rule that if a personal property lease is rejected and the property is not used during the period between the petition date and the date of the rejection of the lease, the lessor is not entitled to an administrative claim for rent under section 503(b)(1)(A). In a case dealing with a similar lack of use of property by the debtor, the court in *In re Fred Sanders Co.,* [22 B.R. 902] 7 C.B.C.2d 421 (B.Ct.E.D.Mich.1982) came to the opposite conclusion. There, the court admitted that "no benefit was

conferred upon the debtor" (*Id.* at 424), but ruled that the lessor should be granted an administrative claim for the reasonable rental value of the leased property. To do otherwise, according to the court, would "not comport with elementary notices of justice." *Id.* at 426.

In addressing this issue in *In re Xonics, Inc.,* 65 B.R. 69 (Bankr.N.D.Ill.1986), the Court was faced with the same issue and stated as follows:

Two theories have developed with regard to determining claims for administrative rent in bankruptcy proceedings. One theory advanced by the case of *In re United Cigar Stores Company of America,* 69 F.2d 513, 516 (2nd Cir.1934) adheres to the view that reasonable rental value must be based on the value of Debtor's actual use of the property. The other theory advanced by the case of *Kneeland v. American Loan and Trust Company,* 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890) and long followed by the Seventh Circuit in *In re Millard's, Inc.,* 41 F.2d 498 (7th Cir.1930) subscribes to the view that administrative rent claims must be based upon the reasonable rental value of the property regardless of the use made of the property. *See In re Schnabel,* 612 F.2d 315 (7th Cir.1980); *In re International Storage Corporation,* 41 B.R. 808 (Bankr.E.D.Wis.1984).

Debtor suggests that this Court follow the view that reasonable rental value should be based on the value of Debtor's actual use of the property. This we will not do. This Court shall adopt the view long followed by the Seventh Circuit that administrative rent claims must be based upon the reasonable rental value of the property regardless of the use made of the property.

There is a presumption that the reasonable rental value of the property is equivalent to the amount of rent fixed in the lease. *In re Schnabel, supra,* at 318; *In re Gourmet Gallery, Inc.,* 27 B.R. 912, 915 (Bankr.E.D.Pa.1983). This presumption, however, can be rebutted by convincing, contradictory evidence. *In re Schnabel, supra,* at 318; *In re GHR Energy Corp.,* 41 B.R. 668, 672 (Bankr.D.Mass.1984). This rebutting evidence may point toward an amount which is less than the amount fixed in the lease, *In re Schnabel, supra,* at 318, or it may point toward an amount which is greater than the amount fixed by the lease. *Don Allen Chevrolet, Inc. v. Foreman (In re First Research Corporation),* 457 F.2d 331 (5th Cir.1972). In any event, the analysis should only center around the reasonable rental value of the property as established either by the lease rate or by the rate established by the rebutting evidence presented by a party. If it is determined that the reasonable rental value of a property is greater than the lease rate, it would be unfitting for a debtor to complain since "a debtor has it within his power to minimize the costs of administration by acting promptly" by either rejecting or assuming the lease. *In re Fred Sanders Company,* 22 B.R. 902, 907 (Bankr. E.D.Mich.1982).

*Id.* 65 B.R. at 73–74. (Footnote omitted).

At footnote 1, in *In re Xonics, Inc.,* the Court quoted the court in *Diversified Services, Inc. v. Harralson,* 369 F.2d 93, 95 (5th Cir.1966), where it was stated:

[I]n establishing proper administrative rent, ... the Referee should not consider that the trustee has used only for storage purposes property that had been occupied by a going business.... Nor can the appropriate rent be limited by the amount that the Referee feels the estate can "afford to pay"—to do so would be to confer on general creditors an advantage obtained after bankruptcy at the expense of the landowner.

*Id.* 65 B.R. at 74, N. 1. *Accord, Matter of International Storage,* 41 B.R. 808, 809–10 (Bankr.E.D.Wis.1984).

The Court has reviewed the authorities cited by the Debtor in opposition to the Motion for Summary Judgment by EKC.

Two of the three cases from this circuit cited by Debtor in arguing for the adoption of an "actual use" formula in this case are misplaced. *In re Jartran, Inc.,* 886 F.2d 859 (7th Cir.1989), involved an attempt by a

**581**

creditor in one Chapter 11 case to obtain administrative priority status as to a claim in a prior Chapter 11 case involving the same debtor. The Court held that an administrative claim in a prior Chapter 11 does not translate into an administrative claim in a subsequent Chapter 11. *Id.* 886 F.2d at 870–71. The *Jartran* court never addressed the administrative lease claim valuation issue now at issue, and certainly did not adopt the "actual use" formula. Thus, *Jartran* is of no assistance to Debtor in this case.

*Matter of Patch Graphics*, 58 B.R. 743 (W.D.Wis.1986) also offers the Debtor no assistance. *Patch Graphics* involves a post-petition loan which enabled the Debtor to purchase certain equipment, not an administrative lease claim. The policy considerations involved in determining the status of a new post-petition loan clearly have no bearing on the appropriate standard for the valuation of an administrative lease claim under an existing prepetition lease.

The Debtor is correct in that the Court in *In re Carmichael*, 109 B.R. 849 (Bankr. N.D.Ill.1990), a Chapter 12 case, did reject the *Fred Sanders* case and adhered to the conclusion reached in *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir.1986), which held that for an administrative claim to be allowed under § 503(b)(1), the estate must accrue real benefit from the transaction, rather than mere potential benefit. The Court also relied on *In re Jartran*, 732 F.2d 584 (7th Cir.1984), for the proposition that an estate can only be charged for expenses "beneficial to the debtor-in-possession in the operation of the business" *quoting, In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir. 1976), and rejecting any equitable right to payment as in *American Anthracite and Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2nd Cir.1960).

The *Carmichael* court observed that the *Jartran* court adopted the analysis applied in *Mammoth Mart* for the purposes of § 503(b)(1). 732 F.2d at 587–88. However, *Jartran* nor *Mammoth Mart* involved the occupancy and use of leased property by a debtor pursuant to a prepetition lease be-

tween the petition date and the date the debtor rejected the unexpired lease. Neither does the *Carmichael* court directly discuss *In re Millard's, Inc.*, 41 F.2d 498, *supra. See,* 109 B.R. at 852. In addition, the *Mammoth* Court, *cited* with approval in *Jartran*, at Footnote 3 stated as follows:

> Where, as here, the claims are based upon a contract which the debtor-in-possession has neither rejected nor expressly affirmed, it is not clear whether the amount of the priority will be determined by the contract price or by the reasonable value of the services that have been provided. *Compare* 8 *Collier on Bankruptcy* ¶ 3.15[6] (a contract remains in effect until expressly rejected by the Chapter XI debtor-in-possession) and *In re United Cigar Stores*, 69 F.2d 513, 515 (2d Cir.1934) (right to priority based upon reasonable value of services, not contract price). Given our holding today, we need not take a position on this question.

Thus, the *Mammoth* court expressly declined to decide the issue before the court, and neither did the facts as presented in *Jartran* compel the *Jartran* Court to reach the issue. Clearly, there is distinction between those cases where the creditor is induced to provide goods or services to a debtor postpetition, and the case, as here, whether the lease was executed prepetition. Here, the debtor, as lessee, already had possession and control over the leased equipment on the petition date, and there was nothing further that EKC, as lessor, was required to do postpetition. Thus, to the extent the *Carmichael* court is inconsistent with *In re Millard's, Inc.*, 41 F.2d 498, *supra*, the court declines to follow it. The *Carmichael* court also distinguished in *In re Xonics*, 65 B.R. 69, noting that in *Xonics* the court had ultimately found the Debtor had in fact used the leased property.

The decisions from other circuits cited by Debtor includes the case of *In re Pickens–Bond Construction*, 83 B.R. 581 (E.D.Ark. 1988), which involved an aircraft lease. The Debtor never used the aircraft. The debtor, within three weeks of filing its bankruptcy petition, notified the creditor

that it did not want the aircraft at issue. The debtor then took no action to delay the aircraft's return. Yet, inexplicably, the lessor took over three months to repossess the airplane after the notice and over one month after rejection of the lease pursuant to the order confirming the plan. Under these circumstances, the *Pickens–Bond* court rejected *Fred Sanders,* 22 B.R. 902, *supra,* and adopted the reasoning in *Broadcast,* 54 B.R. 606, *supra,* and ruled that the creditor was not entitled to an administrative claim for the lease payments that covered the period from petition date to date of repossession.

Unlike the debtor in *Pickens–Bond,* the record in this case does not indicate that the Debtor ever advised EKC that it did not want the leased equipment, and EKC is not requesting an administrative claim beyond the date of formal rejection. The Debtor remained silent as to its intentions relating to the leases with EKC for almost sixteen months, until its failure to respond to EKC's Motion to Assume or Reject triggered the rejection of the lease agreements pursuant to the docket entry order of September 13, 1990. Clearly, the factual and equitable circumstances which led the *Pickens–Bond* court to not apply the "reasonable lease value" formula in making its administrative claim determination are not available to Debtor in this case.

It is also noted by taking judicial notice of the record in the main case that EKC on June 20, 1990, filed a motion requiring the Debtor to accept or reject the lease, which was approximately eleven months after the petition date.

*Broadcast Corp. of Georgia v. Broadfoot,* 54 B.R. 606 (N.D.Ga.1985), cited by the Debtor was not a Chapter 11 case as is the one before the Court. *See also, In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986) which affirmed the District Court's decision in *Broadcast.* As a Chapter 7 case converted from a Chapter 11, *Broadcast* in rejecting *Fred Sanders,* 22 B.R. 902, *supra,* was decided under policy considerations wholly different and distinct from those relevant to this case. In addition, the *Broadcast*

court distinguished the facts in that case from those in *Fred Sanders,* by noting that in *Fred Sanders* the trustee *possessed* the equipment for which the claim was sought, while in *Broadcast,* the trustee *neither* used nor possessed the equipment after a 17 day period had ended. *Broadcast,* 54 B.R. at 611, N. 4. The *Broadcast* court in limiting the creditor's administrative claim to "actual use" stated that:

The primary rationale for this limitation is the need to minimize the administrative dispersal of the estate's limited assets, in order to protect the unsecured creditors' interests. *This is particularly important in the Chapter 7 context, where the estate is to be liquidated rather than rehabilitated. Since the goal in a Chapter 7 case is to "cash out" the bankrupt entity, rather than continue its operations, Chapter 7 is more concerned with maximizing the size of the estate to be distributed than with the Chapter 11 goal of inducing third parties to contribute towards the continued operation of the business. See, In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976) (application of administrative expense provisions in chapter 11 context is primarily a means of implementing the rehabilitation of insolvent businesses).

*Id.* 54 B.R. at 611. (Emphasis added).

The case before the Court is a Chapter 11 case, where the primary emphasis is on reorganization. Therefore, *Broadcast* actually supports, rather than questions, the *Sanders* formula and its policy of not penalizing a creditor for cooperating with a debtor in its attempt to reorganize its business.

Lastly, the Court must address the assertion raised in the Debtor's objection that EKC was guilty of laches in failing to assert its rights in the leased equipment for almost one year, and that as a result of that delay, EKC "committed laches, greatly prejudicing" the Debtor's estate and unsecured creditors.

The Debtor cited no case law to support this position and no affidavits or other competent evidence as required by Fed.R.Civ.P.

56(e) was submitted by the Debtor in support of this bold assertion.

■ Supporting Memorandum, not sworn or in affidavit form making factual assertions, even if accompanied by exhibits does not meet the requirements of Rule 56(e), and cannot be relied upon by the Court as establishing a basis for summary judgment. *Macklin v. Butler,* 553 F.2d 525 (7th Cir.1977); *Smith v. Mack Trucks, Inc.,* 505 F.2d 1248 (9th Cir.1974); *Goldman v. Summerfield,* 214 F.2d 858 (D.C.Cir.1954). By the same token, unsworn objections by Debtor's counsel cannot be considered in ruling on a motion for summary judgment.

Thus, the Debtor has not raised a genuine issue of material fact on the issue of laches.

■ However, even assuming *arguendo,* the Court could take the Debtor's assertions as true, that alleged conduct, standing alone, would not be sufficient to constitute laches.

EKC had no affirmative *duty* to move for the Debtor to accept or reject the leases, although it had a right to do so under the Code and the Rules. In addition, a lessor has no affirmative obligation to attempt to physically repossess its leased equipment.

On the other hand, the Debtor was in a much better position than EKC to make an informed business decision as to whether it actually needed the equipment for use in its own business operations. EKC is in the business of leasing equipment, not using equipment.

The Debtor, while actually physically possessing the leased equipment at all relevant times, was given more than ample time to determine whether the use of the leased equipment was a integral component of any post-petition business plan that it might have been formulating, and yet inexplicably waited some fifteen months before it decided to reject the leases, while all this time EKC was denied both the rentals and the possession of the equipment. This was not the design or purpose of § 365 in a Chapter 11.

■ Laches is unlike the running of a statute of limitations which is based merely on the running of time; rather, laches is based on changes of conditions or relationships involved with the claim. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374 (7th Cir.1987).

■ In order to support a defense of laches, there must be a showing of both a lack of diligence by the party against whom the defense is asserted, and prejudice to the defending party. *Zelazny v. Lyng,* 853 F.2d 540 (7th Cir.1988); *Lingenfelter v. Keystone Consol. Industries, Inc.,* 691 F.2d 339 (7th Cir.1982).

■ "Laches" is an equitable defense which involves an unexcusable delay in asserting a right, implied waiver and circumstances causing prejudice to an adverse party. *Allegheny Airline, Inc. v. Forth Corp.,* 663 F.2d 751 (7th Cir.1981).

■ Laches is an equitable doctrine not fixed by any unyielding measure, but it is to be determined in each case by its factual situation. *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477 (7th Cir. 1975); *cert. den.* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99.

■ In order for laches to apply, the plaintiff must have unreasonably and inexcusably delayed filing of suit and the length of the delay stands at the core of the issue. *Lingenfelter v. Keystone Consol. Industries, Inc.,* 691 F.2d 339, *supra.* However, mere delay is insufficient to establish laches. *Wycoff v. Motorola, Inc.,* 502 F.Supp. 77 (D.C.Ill.1980), *aff'd.,* 688 F.2d 843 (1982). Thus, a mere passage of time cannot constitute laches, but the Court in its discretion may find laches if passage of time can be shown to have lulled the defendant into a false sense of security or that the defendant acted in reliance on the delay of the plaintiff. *Helene Curtis Industries, Inc. v. Church & Dwight, Co.,* 560 F.2d 1325 (7th Cir.1977), *cert. den.,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

■ Before granting laches as a defense, the Court must be convinced that the

defendant reasonably relied on the plaintiff's failure to file suit, and, that based on the assumption that the plaintiff would not sue, the defendant altered his or her position in a detrimental manner; more than mere inconvenience to the defendant is required. *Bennett v. Tucker*, 827 F.2d 63 (7th Cir.1987).

■ The party alleging laches has the burden of proving inexcusable delay and resulting prejudice. *Jeffries v. Chicago Transit Authority*, 770 F.2d 676 (7th Cir. 1985), *cert. den.* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986).

Thus, the mere passage of time, standing alone, before EKC asserted its rights under the leases is not sufficient to constitute laches. The Debtor, who has the burden on any such affirmative defense must show more than he was merely inconvenienced. The Debtor must show actual prejudice based on a reasonable reliance by the Debtor on EKC's unreasonable inaction, or that the Debtor affirmatively represented that it would not assert its rights under the leases, or that there was some unexcusable delay by EKC. No such competent evidence was submitted by the Debtor in opposition to EKC's motion for summary judgment. All that the record shows is that EKC gave the Debtor an opportunity for a period of approximately eleven months to make an informed business decision as to whether it desired to accept or reject the leases, before it filed its motion for the Debtor to assume or reject the leases on June 20, 1990, and that the Debtor, for whatever reason, failed to act diligently in making that decision before that time. *See, e.g., In re C.M. Systems, Inc.*, 89 B.R. 947, 949–50 (Bankr.M.D.Fla.1988).

Finally, the Court would note that pursuant to 11 U.S.C. § 1121(b), the Debtor had the exclusive right to file a plan for the first 120 days. Thus, it was certainly reasonable for EKC to not proceed during this period, in order to see if the Debtor was going to file a plan by that time. Normally, a bankruptcy court should not generally shorten the time to assume or reject a lease of a principal asset of the debtor-in-possession to less than 120 days after filing the

petition. *See, In re Wedtech Corp.*, 72 B.R. 464, 471–72 (Bankr.S.D.N.Y.1987). In addition, the Debtor did not file its initial plan, and disclosure statement until September 10, 1990, or approximately fourteen months after the petition was filed. Thus, EKC had no knowledge of what shape the Debtor's reorganization efforts would take until that time. The Debtor's plan does not propose to treat EKC's lease in any of the classes one through nine set out therein. (*See*, Article III). In addition, at Article V it is provided that the Debtor shall reject all executory contracts which were not specifically assumed in the lease. Thus, at this time EKC first became officially aware that the Debtor intended to reject the subject lease.

Accordingly, the Court concludes that the Debtor's estate is subject to an administrative claim based on the holdings in *Kneeland v. American Loan and Trust Co.*, 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379, *In re Millard's*, 41 F.2d 498, *supra, Fred Sanders Co.*, 22 B.R. 902, *supra*, and in *In re Xonics, Inc.*, 65 B.R. 69, *supra*, as well as a host of other Act and Code cases in accord with those decisions. The Court concludes that the administrative rent claim shall be based on the "reasonable rental value" rule, rather than on the "actual use" rule. The Court wishes to make it very clear, that this decision only has direct application in a Chapter 11 case, involving rental equipment, where the Debtor either uses or actually physically possesses the equipment, and a different result might be reached by the Court in a Chapter 11 case, involving equipment that the Debtor has neither used or possessed, or non-residential real estate, or in a Chapter 7 case.

The Court is also not deciding if the Debtor has a right to set off an alleged prepetition preference versus EKC's administrative claim as asserted by the Debtor in its objection to EKC's claim.

However, this judgment shall only be a partial summary judgment in that this summary judgment only resolved the legal issue of the proper standard to be applied to EKC's administrative claim. The Debtor

has not been given an opportunity to submit evidence on the factual issue of whether the contractually reserved rent in the equipment leases was clearly unreasonable, or inequitable, e.g., if the lease rental terms were exorbitant or the equipment was defective, or did not operate in such a way as to perform the tasks contemplated by the lease.

In this regard, the Court's attention is directed to *In re Thompson*, 788 F.2d 560 (9th Cir.1986). There the Bankruptcy Court concluded that the equipment lessor should be allowed an administrative claim upon rejection of the leases by the Debtor at the contractual rate of the rent reserved in the leases from the date the Debtor filed its petition to the date they rejected the lease. However, the Bankruptcy Court made no findings as to whether the Debtor had presented sufficient convincing evidence to the Bankruptcy Court to overcome the presumption that the amount of the administrative claim was the amount reserved in the lease agreements. The *Thompson* Court stated:

When a lease is ultimately rejected but its interim continuance was an actual and necessary cost and expense of the estate, the allowable administrative expense is valued not according to the terms of the lease, *but cf. Mathews v. Butte Machinery Co.*, 286 F. 801, 805–06 (9th Cir.1923); *Dayton Hydraulic Co. v. Felsenthall*, 116 F. 961, 966, 969 (6th Cir.1902), but under an objective worth standard that measures the fair and reasonable value of the lease. *In re Cochise College Park, Inc.*, 703 F.2d [1339] at 1354 n. 17 [ (9th Cir.1983) ]; *In re Fredrick Meats, Inc.*, 483 F.2d 951, 952 (9th Cir.1973) (*per curiam*); *In re First Research Corp.*, 457 F.2d 331, 333 (5th Cir.1972) (*per curiam*). The rent reserved in the lease is presumptive evidence of fair and reasonable value, *In re Cochise College Park, Inc.*, 703 F.2d at 1354 n. 17; *In re Axton*, 641 F.2d [1262] at 1273 [ (9th Cir.1981) ] but the presumption may be rebutted by demonstrating that the reasonable worth of the lease differs from the contract rate, *In re Peninsula Gunite, Inc.*, 24 B.R. 593, 595 (Bankr. 9th Cir.1982) (*per*

*curiam*). *See*, 2 *Collier on Bankruptcy, supra*, ¶ 365.03[2], at 365–29 to –30 ("[I]t is the settled rule that until assumption or rejection of the debtor's lease, the estate is liable only for the reasonable value of the use and occupancy of the premises. Such value may be, but is not necessarily, fixed at the rent reserved in the lease.") (footnotes omitted).

*The actual value or benefit conferred on the debtor is not the object of the reasonable worth inquiry. But see, American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 126 (2d Cir.1960). *Rather, the fair and reasonable value of the lease upon the open market must control. See Diversified Services, Inc. v. Harralson*, 369 F.2d 93, 95 (5th Cir. 1966) (*per curiam*); *In re Millard's, Inc.*, 41 F.2d 498, 499 (7th Cir.1930). Fair market value may be determined by expert testimony if, in the discretion of the trial court, it is warranted in the circumstances of a particular case. *See In re First Research Corp.*, 457 F.2d at 222; *In re Peninsula Gunite, Inc.*, 24 B.R. at 595. *The debtor's experience and his testimony regarding his actual use of the equipment and the value the equipment conferred upon him would seem in most cases irrelevant, though testimony such as whether the leased equipment operated as promised might bear upon the question whether the equipment was still marketable and acceptable in the industry generally, a matter that in turn would bear upon fair market value. Cf. In re Peninsula Gunite, Inc.*, 24 B.R. at 595. *Equating reasonableness with fair market value provides a neutral estimate of the value of the leased property* and is therefore the fairest measure of compensation for all concerned. Furthermore, *it avoids self-serving testimony by a debtor on the benefit, or lack of benefit, he has experienced.*

Here, the question is whether appellants presented sufficiently convincing evidence to the bankruptcy court to over-

come the presumption that the amount of the administrative claim is the rent reserved in the lease agreements. The record before us contains inadequate evidence on which to base a decision. The transcript of the bankruptcy hearing indicates that the bankruptcy judge may have thought that he was bound to use the rents established by the leases, although he eventually reluctantly admitted all of the evidence appellants wished to put before him on the question.

*Id.* 788 F.2d at 563. (Emphasis supplied).

■ Thus, the Debtor shall be granted ten days from the date of the entry of this Order to Request an evidentiary hearing in which it may submit evidence that the contractual rate is unreasonable, or inequitable, or that there was some failure of consideration as to the leased equipment. However, the Court shall not entertain any evidence that the administrative rent should be based solely on the actual use and occupancy thereof by the Debtor.

In the event, the Debtor fails to request such a hearing, the Court may enter a full summary judgment as to the amount of EKC's administrative claim without further notice and hearing.

It is therefore,

ORDERED, ADJUDGED, AND DECREED, that EKC is hereby granted a partial summary judgment in that the controlling legal principle, in determining EKC's administrative claim, will be the reasonable rental value of the leased equipment, and said claim shall not be based on actual use and occupancy of the leased equipment by the Debtor. And it is further,

ORDERED, that the Debtor shall have ten (10) days from the date of the entry of this Order to request an evidentiary hearing on the reasonableness of the amount reserved in the subject leases, and failing to do so, the Court may enter a final Order as to EKC's claim without further notice and hearing.