In re **LITHO SPECIALTIES, INC., Debtor.**

**LITHO SPECIALTIES, INC., Appellant,**

v.

**FLEET CREDIT CORPORATION, Appellee.**

Bankruptcy No. 3–92–4304.

Civ. No. 3–92–770.

United States District Court,
D. Minnesota,
Third Division.

April 26, 1993.

---

Thomas J. Flynn and Thomas J. Seymour, Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, for appellant.

Allen I. Saeks and Douglas B. Greenswag, Leonard, Street and Deinard, Minneapolis, MN, for appellee.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This matter comes before the Court on appellant Litho Specialties, Inc.'s ("Debtor") appeal from an Order of the United States Bankruptcy Court[1] holding that (1) the Debtor is obligated to Fleet for rental payments in the full amount of the equipment leases from October 6, 1992 until the Debtor assumes or rejects the leases, and (2) Fleet is entitled to recover the rent accruing from August 7, 1992 to October 6, 1992, in the full amount specified in the leases, as an administrative expense under 11 U.S.C. § 503(b). The Bankruptcy Court further ordered the Debtor to comply with all of its non-monetary obligations to Fleet under the leases and shall assume or reject the leases no later than December 5, 1992.

The Debtor appeals the Order with respect to the determination that Fleet is entitled to an administrative expense claim

---

1. The Honorable Gregory F. Kishel, United States Bankruptcy Court, District of Minnesota.

valued at the full amount contemplated by the leases.

## Background

Litho Specialties, Inc., is a Minnesota corporation specializing in commercial printing with its principal place of business in St. Paul, Minnesota. Fleet Credit Corporation is a Rhode Island corporation engaged in the business of leasing commercial printing equipment with its principal place of business in Providence, Rhode Island.

On June 24, 1990, the Debtor and Fleet entered into a Master Equipment Lease Agreement ("Master Lease"). The Master Lease was to govern and supplement the Debtor's lease of commercial printing presses and related equipment from Fleet. Under the terms of the Master Lease, the Debtor obligated itself to pay all monthly rent due under the subsequent equipment leases and any applicable sales or use taxes.

On June 24, 1990, the Debtor and Fleet entered into True Lease Schedule No. 30367–3 ("Harris Lease"). The Debtor leased one Harris Six Unit Offset Press and related computer controls, attachments, accessories and additions ("Harris Press"). The Debtor agreed to pay Fleet a monthly rent of $18,710, plus the required 6.5% Minnesota sales tax of $1,216.15 for a period of 60 months.

The Debtor and Fleet also entered into True Lease Schedule No. 30367–4 ("Scitex Lease No. 1"). Pursuant to this lease, the Debtor leased one Scitex Microwhisper computer station and related computerized commercial printing equipment ("Scitex Press No. 1"). Under the terms of this lease, the Debtor agreed to pay Fleet a monthly rent of $11,193.14, plus sales tax of $727.56 for a period of 60 months.

Finally, the Debtor and Fleet entered into True Lease No. 30367–5 ("Scitex Lease No. 2"). Under this lease, the Debtor leased additional Scitex computerized commercial printing equipment. ("Scitex Press No. 2"). The Debtor agreed to pay Fleet a monthly rent of $2,267.50, plus sales tax of $173.39 for a period of 60 months.

On August 7, 1992, the Debtor commenced proceedings for relief under Chapter 11 (reorganization) of the Bankruptcy Code. Subsequent to the petition date the Debtor made no payments to Fleet on the leases.

At a September 30, 1992 Meeting of Creditors, the controller of the Debtor, Mr. Stewart, stated that the Scitex Press No. 1 and Scitex Press No. 2 were being used at approximately 75% to 80% of capacity. The Harris Press was being used at less than 5% of capacity. At the time of the meeting, however, the Debtor was also leasing a Komori Press from another party. The Komori Press and Harris Press perform similar functions and the Debtor only intended to assume one of the leases.

Fleet brought a motion to compel immediate payment of all future rents and to have the rental payments which the Debtor had failed to pay (rent from the petition date, August 7, 1992 to the date of the hearing on the motion, October 6, 1992) declared an administrative expense claim pursuant to 11 U.S.C. § 503(b). The Debtor did not dispute that the claim for missed rental payments should be considered an administrative expense.[2] The controversy

---

**2.** The Bankruptcy Code allows any entity to request payment for a post-petition administrative expense. The relevant section provides:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including
> (1)(A) The *actual, necessary costs* and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case;

11 U.S.C. § 503(b)(1)(A). Claims allowed as administrative expenses receive first priority under 11 U.S.C. § 507(a)(1).

Administrative expense claims should be narrowly construed. *In re Bellman Farms, Inc.,* 140 B.R. 986, 998 (Bankr.D.S.D.1991) ("The threshold requirement, that the expense incurred by 'actual' and 'necessary' to the preservation of the estate, ... indicated Congress' intent that priority status be awarded parsimoniously to unsecured creditors who are also a party to an executory contract with the debtor over other unsecured creditors. It would be contrary to the purpose of the statute to saddle debtors with burdensome post-petition obligations or give preferential treatment to select creditors by creating a broad category of administrative ex-

focused on the proper *valuation* method of the administrative expense claim.

A hearing was conducted before the Bankruptcy Court on October 6, 1992. The Bankruptcy Court held that the proper valuation of Fleet's administrative expense claim was to be based on a rebuttable presumption that the lease terms represented the fair value of the claim absent substantial and convincing proof by the Debtor that the imposition of the lease terms would be unwarranted. The Court concluded that the Debtor had failed to come forward with evidence that the lease terms were out of line with current prevailing market conditions or that the Debtor could have obtained the use of the same assets on substantially better financial terms. Had the Debtor produced such evidence, the Court stated that the valuation of the claim would have been limited to the market rate.

The Bankruptcy Court rejected the Debtor's contention that the value of the administrative claim is based on the Debtor's *actual* level of use of the equipment for two reasons. First, the Court determined that such a standard would create a tremendous administrative burden because it would require a fact-specific inquiry into the Debtor's actual level of equipment use. Second, a lessor-creditor is not adequately

protected when the value of the administrative expense claim is based solely on the Debtor's use patterns; the Debtor would have total control of the value of the claim simply by decreasing its use of leased equipment. This appeal by the Debtor followed.[3]

## DISCUSSION [4]

### I. VALUATION OF THE ADMINISTRATIVE EXPENSE CLAIM

The parties agree that, under either proposed valuation method, there is a rebuttable presumption that the lease terms represent the fair value of the administrative expense claim. *See* Appellant's Brief, p. 8; Appellee's Brief, p. 14. However, the parties differ with respect to the evidence necessary to rebut that presumption. The actual use valuation method espoused by the Debtor allows a debtor to rebut this presumption with a showing of convincing evidence that the actual value to the estate is less than the lease amount based on the Debtor's actual use of the property. *In re Subscription Television of Greater Atlanta,* 789 F.2d 1530, 1532 (11th Cir.1986), *aff'g Broadcast Corp. of Ga. v. Broadfoot,* 54 B.R. 606 (N.D.Ga.1985) (where debtor used the subject matter of the executory contract for a seventeen-day period but retained the right to use the subject matter

---

penses" (citation omitted)). In order for the expense to be "actual" and "necessary," the debtor must have made some actual use of the asset, so the existence of an administrative expense claim (as opposed to the valuation of that claim) requires some actual use. *In re Intran,* 62 B.R. 435, 436 (Bankr.D.Minn.1986).

The party seeking an administrative expense must show that the expenditures benefit the estate as a whole rather than the individual creditor. *In re Jartran, Inc.,* 886 F.2d 859, 871 (7th Cir.1989).

3. The Statements of Issues on Appeal are as follows: Statement of Appellant (Debtor):

1. What is the proper measure of post-petition compensation to a lessor of personal property from the debtor-lessee of the property where the lease is not assumed?
Statement of Appellee (Fleet):
1. Whether the Bankruptcy Court correctly determined that the monthly rent reserved under the three equipment leases entered into between Litho Specialties, Inc. ("Debtor") and Fleet Credit Corporation ("Fleet") is, ab-

sent substantial or convincing evidence to the contrary, presumed to be the reasonable value, for administrative expense purposes, of the the Debtor's post-petition retention and use of Fleet's equipment?

2. Whether, based on a specific finding (which was acknowledged by the debtor) that the rent reserved under the Debtor's equipment leases with Fleet in fact constitutes the fair rental value therefor, the Bankruptcy Court correctly determined that the presumption set forth above is not rebutted by evidence that the debtor was using the equipment at less than full capacity?

4. The district court reviews the Bankruptcy Court's findings of fact under the "clearly erroneous standard," and reviews its conclusions of the law under the *de novo* standard. *In re Leser,* 939 F.2d 669, 671 (8th Cir.1991); *In re Lumber Exchange Bldg. Ltd. Partnership,* 134 B.R. 354 (D.Minn.1991). In this case, the facts are undisputed and the only legal issue concerns the proper standard for valuing the administrative claim.

with the hope of enhancing estate and preserving the assets of the estate, the creditor holding the executory contract was entitled to an administrative expense claim for only those seventeen days of actual use). Thus, the Debtor argues the administrative expense claim should be valued based on 75% to 80% of the lease value for the Scitex Presses and 5% of the lease value for the Harris Press.

In contrast, the fair market valuation method ignores the debtor's level of asset use and allows the debtor to rebut the presumption that the lease terms represent the fair value of the administrative expense claim only with a showing of convincing evidence that the fair value (i.e. market rate) for the lease of similar property is below the rate of the lease in force. *In re Curry Printers, Inc.*, 135 B.R. 564 (Bankr. N.D.Ind.1991); *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982). The Bankruptcy Court in this case adopted the fair market valuation method and valued the administrative expense claim based on the unrebutted presumption that the lease rate was the fair value of the claim.

Courts which have addressed the proper valuation method for administrative expense claims are split as to which valuation method to follow. *See In re F.A.Potts & Co., Inc.*, 137 B.R. 13, 16–17 (E.D.Pa.1992) (discussing the subjective (actual use) and objective (fair market) approaches in determining the value of post-petition use and occupancy of leased property and citing cases from the various circuits which have adopted one method or the other).[5] In addition, some courts appear to have combined elements of both approaches. *See, e.g., In re Dant & Russell*, 853 F.2d 700, 707 (9th Cir.1988) ("The court may choose to fix a different amount [of the administrative expense claim] based on the debtor-in-possession's actual use; but that amount cannot exceed 'the fair and reasonable val-

ue of the lease upon the open market.' " (quoting *In re Thompson*, 788 F.2d 560, 563 (9th Cir.1986) (internal citation omitted))).

■ While the courts have not explicitly based the decisions on the nature of the leased asset and the nature of its use, this Court believes that such considerations are the principal elements in the determination of which valuation method to adopt. When the nature of the asset or its use can be divided into discrete, leasable units, courts generally apply the actual use valuation method. When the nature of the asset or its use cannot be separated into discrete, leasable units, courts generally apply the fair market valuation method. Both methods rest on the presumption that the contract lease rate represents the fair market value for the use of the leased assets, but the actual use method decreases the scope of the lease value to include only the use and benefit the debtor actually derives from the asset.

### A. *Actual Use Valuation*

Courts have adopted the actual use test in circumstances where the equipment or asset in question is easily divisible into discreet or leasable units by which to measure the claim, or units which can be leased individually. For instance, if the debtor uses the equipment or asset for a number of days and then makes no use of it until rejecting the lease, the number of days of use creates a discreet, easy to discern basis for claim valuation. *See In re Subscription Television*, 789 F.2d at 1532 (actual use valuation method used when the debtor used a service for seventeen days and then made no use of the service from that point until rejecting the lease at the end of the 60 day period contemplated in 11 U.S.C. § 365(d)(1)); *In re Lease-a-Fleet, Inc.*, 140 B.R. 840, 846–47 (Bankr.E.D.Pa.1992) (ad-

---

**5.** Much of the early case law addressing this issue is in the area of non-residential real estate leases, and the courts were split on which method to apply. *Compare In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir.1983) (actual use method) *with In re Energy Resources Co., Inc.*, 47 B.R. 337 (Bankr.D.Mass.1985) (fair market value method). In 1984, the Bankruptcy

Code was amended, creating an irrebuttable presumption, notwithstanding section 503(b)(1) of the Bankruptcy Code, that the value of a non-residential real estate leases is the amount specified in the lease. 11 U.S.C. § 365(d)(3). However, the proper valuation of administrative expense claims for *residential* and *personal property* leases remains an open question.

ministrative expense claim based on the number of vehicles actually subleased by debtor when debtor was in the business of subleasing automobiles which it had previously leased from the claimant-lessor); *In re N–Ren Corp.*, 68 B.R. 404, 407 (Bankr. S.D. Ohio 1986) (administrative expense claim based on the number of actual rail shipments when the debtor leased 61 railroad cars, but only used them for a limited number of shipments; the court found that the necessary railroad cars could have been leased on the open market for only those shipments actually made).

In these circumstances, the actual use method comports with the goals of the Bankruptcy Code in that only the portion of the estate's assets or equipment which were "actual, necessary costs and expenses of preserving the estate" are classified as administrative expense claims, thus keeping costs to the estate at a minimum. *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir.1988). *See also Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974) (preservation of the estate is the overwhelming concern of the Code). In a Chapter 11 reorganization, the administrative expenses should be minimized in order to facilitate the ability of the debtor to emerge from bankruptcy as a going concern. *In re Dant & Russell*, 853 F.2d at 707 (the administrative expense provision involves balancing two of the Code's concerns: "maintaining the estate in as healthy a form as possible for the benefit of creditors while allowing essential costs of administering an ongoing business venture to be paid up front, thereby giving the debtor its best shot at emerging as a vital concern." (citation omitted)).

While there may be some perceived unfairness in allowing the debtor to determine the amount of the claimant's administrative expense claim by controlling the level of actual use of the asset [6], the lessor-claimant is not without redress under the Bankruptcy Code. *See In re Intran*, 62 B.R. at 436. For instance, in Chapter 7 liquidation proceedings, an unexpired lease is deemed rejected 60 days after filing unless the court extends the period. 11 U.S.C. § 365(d)(1). In other cases, the lessor can protect its interests by moving the court to set an early date by which the Debtor has to assume or reject the lease. 11 U.S.C. § 365(d)(2). *But see Fred Sanders*, 22 B.R. at 907 ("Nor is the fact that [the lessor] could have moved pursuant to section 365(d)(2) to compel the debtor to assume or reject the lease pertinent to the present inquiry. A lessor is not to be penalized if he cooperates with the debtor and gives him time to resolve his financial problems."). In addition, the lessor may obtain relief from an automatic stay by canceling the lease and taking back the property for cause (11 U.S.C. § 362(d)(1)) or may request the court to prohibit or condition such use "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). *But see Fred Sanders*, 22 B.R. at 906–07 ("Experience under the present code has shown beyond doubt that the transaction cost of seeking any form of relief in the bankruptcy court is an extremely strong deterrent to creditor action, and that creditors will act only where the expected benefits strongly outweigh the costs of the proceeding." (quoting the Senate Committee on the Judiciary, S. 2000: Bankruptcy Improvements Act of 1982, S.Rep. 97–446, 97th Cong.2d Sess. 35 (1982))).

### B. *Fair Market Valuation*

Despite the advantages of the actual use method, courts have rejected it and applied a fair market valuation method which does not take into account the debtor's level of use in the leased asset. Generally, the fair market method has been applied in situations where the property was not, or could

---

**6.** Some courts have characterized the situation where a debtor retains control over the asset as "unjust enrichment" by the debtor. *See In re ICS Cybernetics, Inc.*, 111 B.R. 32, 41 (Bankr. N.D.N.Y.1989) ("As the underlying purpose of according priority is the equitable principle of preventing unjust enrichment of the debtor's estate, ... the debtor is not permitted the actual use of a variable asset without incurring liability of the fair rental value of the asset. While value of the property to the debtor may be, depending upon the circumstances, evidence of the leased property's reasonable market value, it is not the focus of the valuation inquiry.").

not, be used in discrete, leasable units. For example, if the Debtor leases a photocopy machine and uses it post-petition, the administrative expense claim should reflect the value of the leased machine and not the value of the number of copies made because the photocopy machine is the single, inseparable, leasable unit. *See In re Curry Printers, Inc.*, 135 B.R. 564 (Bankr. N.D.Ind.1991) (fair market valuation method used when the lessor's claim was based on two photocopy machines leased to the debtor)[7]; *In re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass.1984) (fair market valuation method used when the debtor was occupying a leased storage tank at less than full capacity). These cases reflect the reality that it is not possible for a debtor to lease half a storage tank; rather, a debtor can only lease a whole one, and therefore, the lease rate reflects the fair market value of what it is possible to lease on the open market.

The decisions using the fair market valuation method have expressed concern about the burden the actual use method places on the lessor insofar as lessors and other claimants with valid charges against the estate should not be penalized by the debtor's desire to minimize administrative expenses by using the equipment at less than full capacity. *Curry Printers*, 135 B.R. at 580); *In re GHR Energy Corp.*, 41 B.R. 668, 672-73 (Bankr.D.Mass.1984); *Fred Sanders*, 22 B.R. at 907 (administrative expense claim allowed in the amount of the lease payments even though debtor claimed that he did not use the leased vans). The Debtor should not be able to deprive the lessor of the leased equipment or property and then unilaterally dictate the amount of the administrative expense claim based on the debtor's actual use of the equipment.

*GHR Energy*, 41 B.R. at 671. The courts also reasoned that the lessor should be able to assume that the leased property is being used for the purpose, and to the extent, for which it was leased, and that the Debtor will pay the reasonable value of the property until it is rejected. *Id.; Fred Sanders*, 22 B.R. at 907. The debtor may also "be generally well aware in advance that a bankruptcy will be necessary and can plan ahead to decide which leases should be retained." *Fred Sanders*, 22 B.R. at 907 (quoting Report of the Committee on the Judiciary, United States Senate on S. 2297, S.Rep. No. 527, 97th Cong. 2d Sess. 12 (1982). By assessing the value of the administrative expenses based on the lease rate, the debtor is also encouraged to consolidate the subject matter of any duplicative leases in order to avoid payment of the lease rate when the debtor only uses a portion of each asset. *See ICS Cybernetics*, 111 B.R. at 41 (rejecting the actual use valuation method as it "provides debtors who would seek to minimize a potential administrative claim with an incentive to act wastefully and promotes a post-petition 'nothing to lose' business attitude on the part of the debtor.")

From the perspective of the court administering the valuation and payment of the expense claims, the fair market valuation method provides a simple, easy to administer, method of determining the amount of the claims. There is no need to engage in extensive findings of fact regarding a debtor's actual use of the asset; instead the court need only review the lease agreement or contract itself and any evidence regarding the fair market value of that lease or contract. *See F.A. Potts*, 137 B.R. at 17. *See also Curry Printers*, 135 B.R. at 585

---

**7.** The *Curry Printers* case is very similar on its facts to the instant case, although the court's findings of fact in *Curry Printers* did not include a percentage of time or capacity which the debtor claimed as the "actual" use of the leased photocopiers. The Bankruptcy Court, after an extensive review and analysis of the cases cited by the parties and the relevant provisions of the Bankruptcy Code, reached the same conclusion that the Bankruptcy Court in this case did— "that the administrative rent claim shall be based on the "reasonable rental value" rule,

rather than the "actual use" rule. *Curry Printers*, 135 B.R. at 584. The Court went on to note, however, that

> [its] decision only has direct application in a Chapter 11 case, involving rental equipment, where the Debtor either uses or actually physically possesses the equipment, and a different result might be reached by the Court in a Chapter 11 case, involving equipment that the Debtor has neither used or possessed, or nonresidential real estate, or in a Chapter 7 case. *Id.*

("Equating reasonableness with fair market value providers a neutral estimate of the value of the leased property and therefore the fairest measure of compensation for all concerned. Furthermore, it avoids self-serving testimony of a debtor on the benefit, or lack of benefit, he has experienced.").

### C. Limitations of Adoption of Either the Actual Use or Fair Market Valuation Method

The current approach of adopting either strict actual use or strict fair market value is not effective because neither method works well in all situations. For instance, assume that a debtor leased 100 trucks but used only 40 of them in the post-petition period before assuming or rejecting the lease. The 40 trucks used by the debtor provide a leasable unit by which the bankruptcy court can value the administrative expense claim. The actual use method produces a reasonable value for the administrative expense claim by taking into account the debtor's level of asset use. Unless the debtor can show that a lease rate for use of 40 trucks (based on 40% of the contract lease rate for the 100 trucks originally leased by the debtor from the lessor) is unreasonable, the bankruptcy court presumes that such a lease rate is the fair value of the administrative expense claim. The fair market value method, however, would ignore the level of asset use and base the claim on the full 100 trucks. This is too broad and places a burden on the debtor which the Bankruptcy Code sought to avoid by providing that administrative expense claims must be "actual" and "necessary" to the preservation of the debtor's estate. In this situation, a method that takes into account the debtor's level of property use is preferable.

In contrast, assume a situation where a debtor leases a machine and uses the machine 6 hours a day in the post-petition period. The actual use method could base the administrative expense claim on 25% of the lease rate because the debtor is only *actually using* the machine 25% of the time (6 out of every 24 hours). This is clearly not what was intended by the terms "actual" and "necessary" in the Bankruptcy Code. The fair market valuation method, on the other hand, reaches a more reasonable result in this situation. The administrative expense claim is based on the full amount contracted for in the lease, as this reflects what the debtor could expect to pay on the open market to lease the machine, regardless of its level of use. If the debtor must use the machine post-petition, the costs of leasing it are "actual, necessary costs and expenses of preserving the estate."

### II. REFINEMENT OF THE APPROACH TO ACTUAL USE AND FAIR MARKET VALUATION METHODS AS TWO SEPARATE METHODS

Taking the advantages of, and justifications for, each valuation method into consideration, this Court concludes that the most appropriate method by which to value an administrative claim is a flexible method which is responsive to the nature of the asset and its use. The valuation analysis should begin with the factual assessment of whether the nature of the asset or its use can easily be divided into discrete, leasable units.[8] If so, the discrete, leasable unit provides the basis of the administrative expense claim. If not, the court should not decrease the basis of the claim. Once the basis of the claim is determined, the lease rate is presumed to provide the fair value of the claim. The debtor may then rebut this presumption with convincing evidence that the fair value (i.e. market rate) for the lease of similar property is below the rate of the lease in force.

The Court believes that this flexible approach best reflects the reality that there are many types of assets which can be part of an estate and that neither valuation method fairly and consistently accommodates these differences. Moreover, by analyzing the nature of the asset, the debtor's

---

**8.** There must be some level of asset use by the debtor or else there would be no administrative expense claim to value. *In re Intran,* 62 B.R. 435 (Bankr.D.Minn.1986).

use of it, and the debtor's ability to lease it on the open market to the same extent the debtor actually uses the asset post-petition, the Court believes that this method addresses the needs of both the debtor and the lessor and is consistent with the purposes of the Bankruptcy Code.

■ In the present case, the leased property (the Harris Press and the Scitex Presses Nos. 1 and 2) are single, indivisible pieces of equipment. The Debtor simply could not have leased 75% of the Scitex Presses or 5% of the Harris Press on the open market. Moreover, there is no evidence that the use of the Presses was confined to a specific period of time. Therefore, the basis of the administrative expense claim is not decreased by the Debtor's less-than-full-capacity use of the Presses. The lease rates presumptively supply the fair value of the claim, and the Debtor did not rebut the presumption with evidence showing that these rates do not comport with market rates. Thus, this Court concludes that the Lessor's administrative expense claims are properly valued in the amount agreed upon in the leases, and the decision of the Bankruptcy Court will be affirmed.

### Order

Based on the files, records, and proceedings herein, IT IS **ORDERED** that the Order of the Bankruptcy Court, dated October 16, 1992, is **AFFIRMED.**